## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELINA GOODE TUCKER, on her own behalf and on behalf of all others similarly situated<br>8980 Harrover Pl #B<br>Lorton, VA 22079<br><br>                    Plaintiff,<br>v.<br><br>BEAUTY BASICS INC., a Louisiana Corporation<br>SERVE:  Edwin H. Neill, III<br>                303 S. Pine Street<br>                Hammond, LA 70403<br>*and*<br>NEILL CORPORATION, a Louisiana Corporation<br>SERVE:  Edwin H. Neill, III<br>                303 S. Pine Street<br>                Hammond, LA 70403<br><br>*and*<br><br>THE ESTÉE LAUDER COMPANIES, INC., a Delaware Corporation,<br>SERVE:  Corporation Service Company<br>                80 State Street<br>                Albany, NY 12207<br><br>                    Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**FLSA COLLECTIVE ACTION AND**<br>**RULE 23 CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Melina Tucker ("Plaintiff"), on behalf of herself and all others similarly situated and on behalf of the general public, hereby alleges:

## NATURE OF THE ACTION

1.  Plaintiff brings this action on behalf of herself and all others similarly situated, against Defendants, Beauty Basics Inc., a Louisiana Corporation, Neill Corporation, a Louisiana Corporation and The Estée Lauder Companies, Inc., a Delaware Corporation (collectively "Defendants") to

remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 et seq. ("FLSA"), the District of Columbia Minimum Wage Act (the "Minimum Wage Act"), D.C. Code §32-1001 *et. seq.* and the District of Columbia Wage Payment Law (the "Wage Payment Law"), D.C. Code § 32-1301 *et. seq.* and, in the alternative, for violations of state consumer protection laws including the District of Columbia Consumer Protection Procedures Act (the "Consumer Protection Act"), D.C. Code §§ 28-3901–28-3913 (2012), and claims for unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation. Plaintiff seeks, for herself and others similarly situated, the following relief, some of which are sought in the alternative: restitution, declaratory and injunctive relief, unpaid wages, unpaid overtime, liquidated damages, treble damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§ 216(b) and 217, and other applicable federal and state law.

2.   Defendant Beauty Basics Inc., a Louisiana Corporation ("Beauty Basics") is a school management company that owns and operates eight (8) cosmetology schools in the Southern United States under the name "Aveda Institute" and/or "Aveda Institute South". Such schools operate in partnership with Defendants Neill Corporation ("Neill") and The Estée Lauder Companies, Inc. ("Aveda"). The institutes serve as a significant retail platform for Neill and Aveda.

3.       Plaintiff and the members of the classes seek to represent are former and current students at the Aveda Institutes.   Plaintiff alleges that Defendants systemically and uniformly utilize and exploit the labor of Plaintiff and members of the classes to perform services for and sell retail products to members of the general public, rather than providing the training and education hours necessary to pass State Board licensing tests. Moreover, Plaintiff alleges that Defendants failed to provide the educational benefits advertised, represented, warrantied and contracted.

## JURISDICTION

4.       The Court has original and supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367(a) and the Class Action Fairness Act of 2005, 28 USCS § 1332 ("CAFA"). Supplemental jurisdiction is properly exercised over such state law claims which present many overlapping and identical issues of law and fact as the FLSA claims. CAFA jurisdiction is

properly exercised over such state law claims as the value of those claims are believed to exceed $5,000,000 on behalf of the alleged class and the citizenship of the parties meets the diversity requirements of CAFA and the other conditions for this Court to assert jurisdiction under CAFA over such claims are present. Moreover, this Court has jurisdiction over the claims alleged herein because Plaintiff seeks relief pursuant to the Fair Labor Standards Act ("FLSA") for the Defendants' failure to pay minimum wages and/or overtime wages as required by 29 U.S.C. § 201-218 et. seq. The employment relationship alleged to exist between the parties is subject to the FLSA because the Defendants are properly deemed "employers" within the meaning of the FLSA as they have in excess of $500,000 in yearly revenue and the employment alleged involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

5.      Venue in this district and this division is appropriate pursuant to 28 U.S.C. §§ 1390(b)(3) and 1391(c), because Plaintiff resides in this district, many of the events complained of occurred in this district, and, upon information and belief, Defendants conduct business and are located in this judicial district and Defendants reside in this district.

## PARTIES

6.      Plaintiff is over the age of eighteen and attended the Aveda Institute South location in Washington D.C. during the time relevant to this litigation. At all relevant times, Plaintiff was enrolled in the institute's cosmetology program.  Plaintiff's written consent to join this action as to Count I (with private information redacted) pursuant to 29 U.S.C. §216(b) is attached hereto as **Exhibit "A".**

7.      Defendant Beauty Basics Inc., is a Louisiana corporation.  Defendant Beauty Basics operates cosmetology and esthetics schools under the moniker "Aveda Institute" throughout the Southern United States in Texas, Tennessee, Louisiana, Alabama, Washington D.C., North Carolina, Georgia and Florida.

8.      Defendant Neill Corporation is a Louisiana corporation headquartered in Hammond, Louisiana.  Neill Corporation is an Aveda distributor for a seven-state region in the US including Texas, Oklahoma, Arkansas, Louisiana, Mississippi, Tennessee and Alabama.

9.      Defendant The Estée Lauder Companies, Inc. is a Delaware Corporation and is an

American manufacturer and marketer of prestige skincare, makeup, fragrance and hair care products. The Estée Lauder Companies, Inc. owns the Aveda Corporation. The Estée Lauder Companies is headquartered in New York.

10.     Plaintiff alleges that the Defendant entities form a single integrated enterprise as they share (a) some functional interrelation of operations, (b) centralized control of labor relations, (c) common management, and (d) common ownership or financial control.

11.     Plaintiff further alleges that the Defendants constitute joint employers as they share (a) the power to hire and discipline Plaintiff and other members of the putative class, (b) supervision and control of Plaintiff and other class members' work schedules or conditions of employment, (c) profited from the conduct described below, and (d) maintenance of employment records.

## FACTUAL ALLEGATIONS

### General Background

12.     At all times relevant, Defendants operate and have operated cosmetology and esthetics schools in Atlanta, Austin, Baton Rouge, Birmingham, Charlotte, Corpus Christi, Covington, Dallas, Hammond, Houston, Jacksonville, Lafayette, Nashville, New Orleans, Orlando, San Antonio, Fort Lauderdale/Miami, Tallahassee, Tampa Bay and Washington D.C. under the name the "Aveda Institute" and/or the "Aveda Institute South" (hereafter the "Aveda Institutes").

13.     The Aveda Institutes offer programs and courses in cosmetology (hair cutting, color, texture services, nail care, makeup application, business development, and retail knowledge), esthiology (facials, waxing, makeup application, business development, wellness and retail knowledge), and massage therapy.

14.     The Aveda Institutes are run in partnership with the Aveda company which manufactures skin and body care, cosmetics, perfume (internally called "pure-fume"), hair color, and hair care products.  These products are utilized in the programs and courses and are also made available for purchase directly to the public through retail sales in the Institutes' facilities.

15.     Defendants operate Aveda Institutes as a for-profit business, meaning they are not registered with, or recognized by, any State or the United States as a non-profit or charitable enterprise.

The legal entities through which such businesses are conducted are required by law to file tax information reports or tax returns with the United States Internal Revenue Service and on those filings such entities are not indicated to be a charity or non-profit business within the meaning of the statutes and regulations that govern their obligation to file those reports or returns.

**Aveda Institutes Programs of Study**

16.     As noted above, the Aveda Institute South has four distinct programs of study: cosmetology, dual license spa therapy, esthiology, and massage.

17.     Each program advertises, represents and warrants that the curriculum is designed to prepare the students for the state licensing examination and provide the training that will prepare them to enter their general field of study.

18.     For example, the Aveda Institutes' Website describes the Cosmetology program as follows:

> The 1500-hour Cosmetology course is a program of 57 weeks that has instructor-led classroom and clinical training as well as practical hands-on application. Training encompasses three types of learning: theoretical knowledge, the foundation of the students' education; practical experience, the application of knowledge; and professional business building skills, vital for the student's success. Each phase of the student's education emphasizes a different combination of learning approaches. The Cosmetology program is comprised of hair and scalp treatments, hair care rinses, hair shaping, hair arranging, chemical waving and relaxing, hair coloring, facials, skin care, hair removal, manicuring/pedicuring, professional business-building skills in management and career development, and employability skills. The last phase of the program will concentrate on Precision Trends in haircutting, hairstyling, and advanced hair coloring and re-texturizing. During this phase of training the student will be accompanied by licensed educators within a salon environment. Students will learn the latest styles and techniques in haircutting, hair styling and hair coloring.[1]

19.     Each program also advertises, represents, and warrants that students will receive training in the Aveda "experience" and products.

20.     Nowhere in Defendants marketing materials are students notified that they will be required to sell Aveda products to the general public.

**Defendants' For-Profit Activities**

---

[1] https://avedainstitutessouth.edu/programs/cosmetology/

21.     The Defendants' for-profit activities include providing educational services (the "educational services business") to paying students in the cosmetological trades, which includes training students to practice, as regulated by various state laws, the trades of cosmetology, barbering, esthetics or skin care, makeup artistry, massage and manicuring.

22.     The Defendants' for-profit activities further include the providing of personal services, for a fee, to members of the public (the "personal services business") who in exchange for paying such a fee receive cosmetology, barbering, esthetics or skin care, makeup artistry or manicuring services.

23.     The Defendants' personal services and retail business are designed to generate a profit for Defendants and do generate a profit for the Defendants and the revenue Defendants receive from the fees such schools charge to the public for the personal services, provided by such business, exceed the value of the materials, if any, that such members of the public consume during the receipt of such services.

24.     The Defendants utilize the labor of the class members, who have also purchased the educational services provided by the Defendants, in the Defendants' personal services business.

25.     The class members are paid no compensation by the Defendants for the labor they provide in the Defendants' personal services business, meaning they receive no payments in United States currency or in instruments that are convertible as a matter of law into such currency in exchange for furnishing such labor.

26.     The Defendants actively promote their personal services business to the public and induces the purchase of those services by offering them to members of the public at a cost lower than the cost typically charged by other businesses that provide such services and do not utilize uncompensated labor to provide such services.

27.     The Defendants' personal services business competes with other profit-making businesses that provide the same personal services that Defendants provide to the members of the public, in that members of the public have available to them other providers of such personal services besides the Defendants who, for a fee, will provide such personal services.

28.     The Defendants are able to advantageously compete with other profit-making businesses that provide the same personal services that they provide to the members of the public by charging members of the public lower fees for such services than those charged by their competitors.

29.     The Defendants' ability to provide the same personal services to members of the public as are provided by their competitors, and earn a profit by doing so despite charging less for those services than their competitors, is either substantially or entirely the result of Defendants enjoying lower operating costs in their personal services business because they provide such services to the public using the class members' unpaid labor while their competitors must pay at least the minimum hourly wage required by the FLSA or state law to their employees who provide the same labor and services to the public.

30.     The Defendants could have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services.

31.     The Defendants have made a conscious decision to not have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services.

32.     The Defendants have made a conscious decision to not have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services, and have made that decision so that Defendants can operate a profit making personal services business that competes with other enterprises that also provide such personal services and are not in the educational services business.

33.     Another significant for-profit activity of Defendants includes the sale of Aveda products to the general public.  Indeed, Plaintiff and the members of the class are forced to participate in a program dubbed the "Basket Program".  Such program is uniformly implemented by Defendants at each of the Aveda Institute South campuses and requires that paying students attempt to sell Aveda products to members of the general public in order to graduate from the program.

34.     Pursuant to the uniform policy, after completion of each personal service provided students including Plaintiff and the members of the Class, are required to escort customers from the salon area to a retail area. During such time, Plaintiff and the members of the Class are required to provide a sales presentation extolling the purported benefits of Defendants' various Aveda products during which time they must place at least one Aveda product in a shopping cart for the customer – hence the name "Basket Program." Such time cut into the student's required "hands-on" apprentice hours.

35.     To prepare Plaintiff and the members of the Class to perform such required sales activities, a significant percentage of instructor-led classroom training time was diverted from state-licensing based curriculum to Defendants' Aveda-specific line of retail products. Such curriculum did not focus on general sales techniques but rather was tailored specifically to the Aveda line of products.

36.     Participation in the "Basket Program" was mandatory. In fact, Defendants in essence tether satisfaction of the state licensing requirements to participation in the program, as the penalties for refusal to participate included, but are not and was not limited to, suspension from the "hands-on practice for apprenticeship" portion of the program (a penalty which significantly frustrates the student's ability to satisfy the practice hour requirements of the State Boards in which the Aveda Institutes were located.)

37.     The Defendants' personal services and retail business are designed to generate a profit for Defendants and do generate a profit for the Defendants and the revenue Defendants receive from the fees such schools charge to the public for the personal services and retail products provided by such business exceed the value of the materials, if any, that such members of the public consume during the receipt of such services.

38.     Thus, Defendants utilize the labor of the Plaintiff and the Class members, who have also purchased the educational services provided by the Defendants, in the Defendants' personal services and retail business.

39.     The Class members are paid no compensation by the Defendants for the labor they provide in the Defendants' personal services business, meaning they receive no payments in United

8

States currency or in instruments that are convertible as a matter of law into such currency in exchange for furnishing such labor.

40.     The labor provided by the class members in the Defendants' personal services and retail sales business were and are essential to that business, in that the labor needed to provide the personal services to the members of the public, for which such members of the public paid a fee to the Defendants, were furnished exclusively or predominately by the class members.

41.     Without the labor provided by the class members, the Defendants' personal services and retail sales business would either cease to operate or they would have to secure labor from other persons who would have to be compensated at a minimum hourly wage as required by the FLSA and such state laws.

42.     While the Class Members' labor in Defendants' personal services business benefits them in securing experience providing such personal services and in achieving their ultimate goal of being licensed to practice their desired occupation, Defendants' decision to run their personal services business as profit making ventures is irrelevant to the class members' education and occupational goals. This is because the Class Members would enjoy the exact same benefit if Defendants did not charge members of the public any fee for such personal services, or if they only charged a fee sufficient to cover the actual cost of the materials, if any, consumed by such members of the public while receiving such personal services.  Moreover, the sale of retail products does not benefit Plaintiff or the members of the putative classes in any way.

43.     Defendants' educational services business neither requires nor benefits from the Defendants' decision to charge members of the public for providing personal services and to carry on a profit making personal services business utilizing the unpaid labor of the class members.

**Employment Allegations**

44.     The Defendants' carrying on a for-profit personal services business, utilizing the unpaid labor of the class members, has the effect of depressing wages and employment opportunities generally among workers who would otherwise provide those personal services. That depression of wages and employment opportunities arises because Defendants are paying nothing whatsoever for

the class members' labor they used to provide such services, which, in turn, results in them being able to conduct a profit making personal services business that charges members of the public less than their competitors must charge, such competitors paying, at least, the minimum hourly wage required by the FLSA and state law to their employees. Such ability of the Defendants to secure labor for their profit making personal services business, without paying, at least, the minimum hourly wage required by the FLSA and state law for that labor, results in other businesses providing the same personal services that do pay such minimum hourly wages being unable to increase the wages of their workers above that minimum hourly amount or hire more workers to provide such services. Such other businesses are unable to do those things as a direct and proximate result of Defendants' utilization of the class members' unpaid labor in Defendants' personal services business and Defendants' ability, as a result of such utilization, to sell such personal services to the public for less than such other businesses could charge and still make a profit.

45.     The amount of hours of unpaid labor that the class members performed in Defendants' personal services business are known to the Defendants who kept detailed contemporaneous records of those hours of worked.  With respect to the named Plaintiff such hours of work were in excess of 500 hours.

46.     The relationship between Defendants and the putative class members, in respect to the labor provided by the putative class members in Defendants' personal services business, is one of employer and employee for the purposes of the FLSA and state law.

47.     That employment relationship exists for the following reasons:

(a)  The class members provided labor in Defendant personal services business that was immediately advantageous to Defendants and the profitability of such business was substantially or wholly dependent upon such labor;

(b)  The class members, while receiving a benefit from their labor in Defendants' personal services business in the form of experience that assisted them in achieving their occupational goals, were simultaneously conferring a valuable economic

benefit upon the Defendants, which were charging the public for the services of the class members and profiting from such charges;

(c)   The class members' labor in Defendants' personal services business displaced or made unnecessary the employment of the persons Defendants would have otherwise had to employ, and pay wages to, for the performance of the labor that the class members furnished and from which the Defendants profited;

(d)   Certain of the class members' labor did not and could not confer any educational or occupational benefit whatsoever upon such class members, in that the class members, or some of them, were required by Defendants to spend time not actually performing personal services on customers but performing manual labor or administrative functions including, but not limited to, janitorial, clerical or logistical functions, that were essential and necessary for the conducting of Defendants' personal services business but which had no educational purpose or benefit to the class members and for which time expenditures Defendants failed and refused to pay the class members any wages whatsoever; and

(e)   For the reasons stated above, as Defendants' utilization of the unpaid labor of the class members in a commercial, for-profit, personal services business depresses the wages of employees in that industry and lessens the employment opportunities in that industry.

48.   Plaintiff alleges that Defendants never paid them nor the FLSA Collective Plaintiffs, or other members of the Class all overtime wages due when they worked in excess of forty (40) hours in a week.  Plaintiff further contend that she, the FLSA Collective Plaintiffs and the other members of the Class routinely worked seven days a week, 11 hours a day shifts without proper compensation.

**Defendants' Misrepresentations and Omissions**

49.   Throughout the relevant time period, Defendants have solicited applications and enrollments through a series of misrepresentations and material omissions.  Such representations and omissions are standardized and appear in Defendants marketing materials in many mediums— (a) in

11

print, in Defendants' handbooks and brochures; (b) online, via Defendants' website and YouTube channel and (c) through the programs admission counsels.

50.      Throughout the relevant time period, Defendants represent and have represented that instruction at the Aveda Institutes would be provided by licensed faculty, that curriculum would prepare students to meet State licensing requirements within proscribed time periods and that students would receive sufficient education to prepare them for licensing exams.

51.       For example, Defendants' press and marketing materials, including brochures, represent "[o]ur students are **educated by accomplished professionals** using innovative curriculums that blend professional techniques with retail and business-building skills" (emphasis added) and "**you'll have licensed educators** to advise and consult you as you become comfortable with your new skills." (emphasis added)

52.      In fact, Defendants fail to properly staff their educating faculty resulting in classrooms without teachers and/or with educators with insufficient knowledge and experience.

53.      As one student lamented, "[o]ur teacher couldn't read nor comprehend what she was trying to teach us. Got a new teacher by the 4th week which put our class behind. Was still passed forward w/o learning the basics in Intro. Next phase our teacher had to help out so we never really had class time. We didn't [sic] learn all the haircuts and had to do book work on our own. We were always told we were "following the story board" but when check we were never on point….At the end of each phase we wer [sic] givin [sic] open book test and passed on." Lakeisha Wood.

54.      Another student echoed this experience, "I was in no way shape or form prepared to pass the dc state board examination and majority of the time I was left in a classroom to entertain myself while my teacher was busy assisting in other short-staffed classrooms. Over all my experience was horrifying and it is not a place that I would recommend to someone else."- Aumbrian Keys

55.      Moreover, Defendants voluntarily represent, advertise and warrant in the Student Handbooks (which were drafted by Defendants) that:

- "[t]he Cosmetology curriculum is designed to prepare students for the State licensing examination and for gainful employment."

- "[t]he Esthiology curriculum is designed to prepare students for State licensing examination for estheticians and for gainful employment."

- "[t]he Manicuring curriculum is designed to prepare students for State licensing examination for estheticians and for gainful employment."

56.     Defendants' brochures and marketing material further provide, "[a]n AVEDA Institute education is rigorous and thorough. Students are proud of the extensive details of their curriculum, which covers anatomy (the bones of the face, important for makeup application) to color theory (essential to understanding complementary colors in hair and makeup)."  The brochure further represents, "[o]ur curriculums are designed to prepare students for the state licensing examinations in their field… we incorporate state-of-the-all audio and visual equipment to enhance the learning experience. From flat-panel monitors to web-based instructional tools and social media integration, we offer a completely modern and unique learning environment."

57.     Such representations are further bolstered and enforced by representation on Defendants' website which advertises, represents and warrants, for example, that the curriculum for the "Cosmetology" program: "encompasses three types of learning: theoretical knowledge, the foundation of the students' education; practical experience, the application of knowledge; and professional business building skills, vital for the student's success[2]".  The website represents and advertises that the "objectives of this program are to prepare the students for the state licensing examination in cosmetology and provide the training that will prepare them to enter into the field of cosmetology.[3]"

58.     While Defendants noted that the curriculum would involve some training on Aveda Institutes philosophy and products, Defendants failed to represent that such training would be at the expense of state-board based training or that students would be required to sell Aveda products (or attempt to sell such products) and that refusal to do so would have a determinantal effect on the individual's ability to receive instruction on State-Board based curriculum.

---

[2] https://avedainstitutessouth.edu/programs/cosmetology/
[3] Id.

59.     Moreover, the curriculum provided by Defendants is not the quality or pace of comparable institutions.  For example, the transcript provided to Plaintiff by Defendants reflected four (4) tests after 1198 hours of instruction whereas other licensed institutes of cosmetology would require the student at the same level to have completed a minimum of twenty-two (22) tests.

**Facts Regarding Plaintiff**

60.     Plaintiff began her course of study in Cosmetology at the Aveda Institute located in Washington D.C. on or about July 6, 2016.

61.     Plaintiff paid tuition to Defendants, as well as, purchased Aveda products from the Aveda Institutes for school use.

62.     During her time at the Aveda Institute, Plaintiff was required to participate in Defendants' Basket Program.  Plaintiff did not receive any compensation for her participation in the program.

63.     Several months into the training, Plaintiff discovered that she had developed an allergy to Defendants products.

64.     Plaintiff submitted a number of written grievances directly to Defendants; however, Defendants have failed to remedy the conduct alleged herein or refund all monies paid by Plaintiff.

65.     In attempting to transfer to a different institution, Plaintiff discovered that Defendants failed to provide and/or record required testing.  As such, other institutions refused to accept Plaintiff's transcript for the purposes of transfer.

## COLLECTIVE ACTION ALLEGATIONS

66.     The Plaintiff brings Count I, the FLSA claim, as a nationwide "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and on behalf of the following Class of persons (hereinafter the "FLSA Class" or "FLSA Collective Plaintiffs"):

> All current and former enrollees of Defendants' Aveda Institutes at any time from the period beginning three years prior to the filing of the complaint through the entry of judgment in this case.

67.    The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

68.    All claims involving the FLSA Collective Class have been brought and may properly be maintained as a collective action under 29 U.S.C. § 216, because there is a well-defined community of interest in the litigation, and the proposed FLSA Collective Class is easily ascertainable by examination of the employment records that Defendants are required to maintain by law, including but not limited to employee time clock reports and payroll records.

69.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements, and job duties, and are and have been subject to Defendants' decision, policy, plan, practice, procedure, routine, and rules to willfully fail and refuse to pay them the legally required overtime wages.  The claims of Plaintiff herein are essentially the same as those of the other FLSA Collective Plaintiffs.

70.    Plaintiff alleges that, during the FLSA Class Period, she and the FLSA Collective Plaintiffs are and were:

     a.   individuals who resided in the United States of America;

     b.   were employed as "non-exempt" employees for Defendants in the United States within the three years preceding the filing of the complaint herein;

     c.   worked more than 40 hours in any given week;

     d.   did not receive all overtime compensation for all hours worked over 40 hours in any given week;

     e.   were not properly paid overtime compensation because Defendants failed to include non-discretionary bonus payments into their rate of pay.

     f.   worked regular hours for which they received no pay whatsoever;

g.   are members of the FLSA Collective Class as defined in the preceding paragraph in this Complaint; and,

h.   have signed a consent to sue that will be filed in this court.

71.   Other non-exempt current or former employee of Defendants should have the opportunity to have their claims for violations of the FLSA heard. Certifying this action as a collective action under the FLSA will provide other non-exempt employees notice of the action and allow them to opt in to such an action if they so choose.

72.   The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last addresses known to Defendants.

## FEDERAL RULES OF CIVIL PROCEDURE

## RULE 23 CLASS ("Rule 23 Class) ALLEGATIONS

73.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

74.   Plaintiff brings this action on behalf of herself and all others similarly situated as a class action, pursuant to Federal Rules of Civil Procedure, Rule 23. The class which Plaintiff seeks to represent are composed of, and defined as follows (collectively the "Classes"):

**Plaintiff Class:**

All United States residents who were enrolled in and paid or caused to be paid tuition at one of the Aveda Institute South facilities at any time between the date judgment is entered in this matter and the date that is four (4) years prior to the filing of this complaint. Excluded from the Class Definition are the Defendants, their parent companies, subsidiaries, and affiliates; any co-conspirators; federal government entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and any judicial officer presiding over this matter and his or her staff.

**Washington D.C. Wage Class:**

All Washington D.C. residents who were enrolled in and paid or caused to be paid tuition at one of the Aveda Institute South facilities during the period three (3) years before the filing of the instant Complaint through the date judgment is entered. Excluded from the Class Definition are the Defendants, their parent companies, subsidiaries, and affiliates; any co-conspirators; federal government entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and any judicial officer presiding over this matter and his or her staff.

**Washington D.C. Consumer Class:**

All Washington D.C. residents who were enrolled in and paid or caused to be paid tuition at one of the Aveda Institute South facilities during the period three (3) years before the filing of the instant Complaint through the date judgment is entered. Excluded from the Class Definition are the Defendants, their parent companies, subsidiaries, and affiliates; any co-conspirators; federal government entities and instrumentalities of the federal government; states and their subdivisions, agencies, and instrumentalities; and any judicial officer presiding over this matter and his or her staff.

75.     **Numerosity & Ascertainability:**  The members of the Class are number in excess of 100 individuals and thus are so numerous that joinder of all members would be impractical, if not impossible.  The identity of the members of the class is readily ascertainable by review of Defendants' records, including payroll records.

76.     **Adequacy of Representation:**  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the class defined above.  Plaintiff has no interests antagonistic to the Class.  Plaintiff's attorneys are ready, willing and able to fully and adequately represent the class and individual Plaintiff.  Plaintiff's attorneys have prosecuted and settled consumer and employment class actions in the past and currently have a number of class actions pending in courts across the Country.

77.     **Common Question of Law and Fact:**  There are predominant common questions of law and fact and a community of interest amongst Plaintiff and the claims of the Class concerning Defendants including: (a) whether Plaintiff and the Class were employees of Defendants for the purposes of the FLSA; (b) whether Defendants failed to pay Plaintiff and the members of the Class

all wages, including overtime wages, earned and/or, in the alternative, (c) whether Defendants failed to provide education with the qualities, characteristics, and standards represented.

78.    **Typicality:** The claims of the Plaintiff are typical of the claims of all members of the Rule 23 Class.  Plaintiff and other Class Members sustained losses, injuries and damages arising from Defendants' common policies, practices, procedures, protocols, routines, and rules which were applied to other Class Members as well as Plaintiff.  Plaintiff seeks recovery for the same type of losses, injuries, and damages as were suffered by other members of the proposed class.

79.    The nature of this action and the format of laws available to Plaintiff and members of the Rule 23 Class identified herein make the class action format a particularly efficient and appropriate procedure to redress the wrongs alleged herein.  If each member of the putative class were required to file an individual lawsuit, the corporate Defendants would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Plaintiff with their vastly superior financial and legal resources.  Requiring each class member to pursue an individual remedy would also discourage the assertion of lawful claims by employees who would be disinclined to file an action against their former and/or current employer for real and justifiable fear of retaliation and permanent damage to their careers.

80.    The prosecution of separate actions by the individual Class Members, even if possible, would create a substantial risk of (a) inconsistent or varying adjudications with respect to individual class members against the Defendants would establish potentially incompatible standards of conduct for the Defendants, and/or (b) adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interest of the other class members not parties to the adjudications or which would substantially impair or impede the ability of the class members to protect their interests.  Further, the claims of the individual members of the class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses.

81.    Such a pattern, practice and uniform administration of corporate policy regarding illegal employee compensation described herein is unlawful and creates an entitlement to recovery by the Plaintiff and the Rule 23 Class identified herein, in a civil action, for declaratory and injunctive

relief, unpaid wages, unpaid overtime, statutory damages, interest, liquidated damages, reasonable attorneys' fees, and costs and all other appropriate legal and equitable relief.

82.     Proof of a common business practice or factual pattern, which the Plaintiff experience and are representative of, will establish the right of each of the members of the Rule 23 Class to recovery on the causes of action alleged herein.

83.     The Rule 23 Class is commonly entitled to a specific fund with respect to the compensation illegally and unfairly retained by Defendants. The Rule 23 Class is commonly entitled to restitution of those funds being improperly withheld by Defendants.  This action is brought for the benefit of the entire Class and will result in the creation of a common fund.

## FIRST CLAIM FOR RELIEF

### (Failure to Pay Overtime Wages – FLSA

### Brought by Plaintiff on behalf of herself and the FLSA Collective Plaintiffs)

84.     Plaintiff, on behalf of herself and the FLSA Collective Plaintiffs, reallege and incorporate by reference paragraphs 1 through 83 as if they were set forth again herein.

85.     Plaintiff brings this lawsuit as a collective action under the Fair Standards Labor Act, 29 U.S.C. §201, et. seq. (the "FLSA"), on behalf of all persons who were, are, all current and former enrollees of Defendants' Aveda Institutes during the time period running from three years prior to the filing of this complaint through and until the entry of judgment in this case.  To the extent equitable, tolling operates to toll claims by the against the collective employees against the Defendants, the collective statute of limitations should be adjusted accordingly.

86.     The FLSA Collective Plaintiffs have been, and are, entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 et seq.  Defendants are subject to the requirements of the FLSA because they are an enterprise engaged in interstate commerce and their employees are engaged in commerce.  Id.

87.     All claims involving the FLSA Collective Class have been brought and may properly be maintained as a collective action under 29 U.S.C. § 216, because there is a well-defined community of interest in the litigation, and the proposed FLSA Collective Class is easily ascertainable by

examination of the employment records that Defendants are required to maintain by law, including but not limited to employee time clock reports and payroll records

88.     The Fair Labor Standards Act, 29 U.S.C. §201, et. seq., states that an employee must be compensated for all hours worked, including straight time compensation and overtime compensation.  (29 C.F.R. §778.223 and 29 C.F.R. §778.315.)  This Court has concurrent jurisdiction over claims involving the Fair Labor Standards Act pursuant to 29 U.S.C. §216.

89.     Pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, the named Plaintiff and those similarly situated were entitled to at least the minimum hourly wage, which is currently $7.25 an hour, for each hour that they labored in Defendants' personal services business and in the event they worked more than 40 hours a week an overtime hourly wage of time and one-half such minimum hourly wage for all hours worked in excess of 40 hours per week.  The FLSA defines "employee" as "any individual employed by an employer."  29 U.S.C. § 203.

90.     The named Plaintiff and those similarly situated were paid no monetary compensation whatsoever by the Defendants for performing labor for the Defendants as employees in the Defendants' personal services business, such failure to pay the Plaintiff and the class members any compensation whatsoever violating the minimum hourly wage requirements of 29 U.S.C. § 206 and, in the event any of the class members or plaintiff ever worked in excess of 40 hours in a week, the overtime pay requirements of 29 U.S.C. § 207.

91.     The FLSA defines "employ" to include to suffer or permit to work. 29 U.S.C. § 203.

92.     The FLSA Collective Plaintiffs are, or were, employed by Defendants and, as such, are or were employees of Defendants. 29 U.S.C. § 203.

93.     As a pattern and practice, Plaintiff and collective employees regularly worked in excess of forty (40) hours in a workweek.  Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, et. seq., Plaintiff and the collective employees are entitled to compensation for all hours actually worked and are also entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any workweek.

94.     Additionally, as a pattern and practice, Defendants failed to pay Plaintiff and the FLSA Collective Plaintiffs premium overtime wages based upon the regular rate earned by them. Although ostensibly paying overtime, Defendants have engaged in a pattern and practice of paying overtime based upon only the hourly component of the pay provided to employees. They have not divided the nondiscretionary income employees such as Plaintiff and the FLSA Collective Plaintiffs derive from "bonuses" by the number of hours worked each week so as to properly calculate the regular rate, upon which premium overtime pay must be calculated.

95.     It is a clear federal law that, when one pays premium overtime pay, one must include in the base rate upon which one computes premium overtime, the value of nondiscretionary wages such as the "bonuses".

96.     At all relevant times, Defendants willfully, regularly, and repeatedly failed, and continue to fail to pay, the FLSA Collective Class Plaintiff at the required overtime rates, for hours worked in excess of 40 hours per workweek.

97.     As explained herein above, Defendants paid the FLSA Collective Class Plaintiffs on both an hourly basis and a commissioned basis. However, when computing the regular rate for purposes of payment of premium overtime Defendants violated, and continues to violate, the FLSA, including 29 U.S.C. § 206(a)(1), by failing to pay for all work performed and for failing to pay sufficient wages including wages for drive time between kiosks.

98.     This Collective Action by similarly situated persons under 29 U.S.C. 216(b) is based upon the failure of the named Defendants to reimburse the named Plaintiff and the FLSA Plaintiff Class for certain transportation expenses that the named Plaintiff and the FLSA Plaintiff Class seek to represent paid when those expenses were primarily for the benefit of the named Defendants.

99.     Questions of law and fact common to collective employees as a whole include, but are not limited to the following:

  a.   Whether Defendants' policies and practices failed to accurately record all hours worked by Plaintiff and other collective employees;

      b.   Whether Defendants failed to adequately compensate collective employees for expenses incurred for the direct benefit of Defendants as required by the FLSA;

      c.   Whether Defendants' policies and practices were to write down the time worked by Plaintiff and collective employees;

      d.   Whether Defendants failed to include all remuneration in calculating the appropriate rates overtime and straight time;

      e.   Whether Defendants failed to reimburse Plaintiff and the FLSA Collective Plaintiffs for expenses that were paid for the primary benefit of the named Defendants;

      f.   Whether Defendants should be enjoined from continuing the practices which violate the FLSA; and

      g.   Whether Defendants are liable to the collective employees.

100.   As a result of Defendants' failure to pay overtime compensation for hours worked, as required by the FLSA, Plaintiff and collective employees were damaged in an amount to be proved at trial.

101.   The FLSA Plaintiff and members of the FLSA Class are entitled to damages equal to the mandated minimum wage for each hour of work, including overtime, within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

102.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the FLSA Plaintiff and members of the FLSA Class are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

103.   Alternatively, should the Court find that Defendants did act with good faith and reasonable grounds in failing to pay minimum wages, the FLSA Plaintiff and members of the FLSA Class are entitled to an award of pre-judgment interest at the applicable legal rate.

104.     Plaintiff, therefore, demands that she and collective employees be paid overtime compensation as required by the FLSA for every hour of overtime in any workweek for which they were not compensated, reimbursed for expenses incurred in the performance of their duties, compensation for miscalculation of overtime and straight time, plus liquidated damages, interest and statutory costs as provided by law.

105.     Accordingly, Defendants are liable for compensatory damages pursuant to 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, costs of this action, and such other legal and equitable relief as the Court deems just and proper.

106.     WHEREFORE, the Plaintiff, on behalf of herself and all members of the FLSA Collective Class, pray for relief as follows:

    a.   Designation of this action as a collective action on behalf of the members of the FLSA Class and promptly issue notice pursuant to 29 U.S.C. § 216(b) to all members of the opt-in class apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual consents to join pursuant to 29 U.S.C. § 216(b);

    b.   A declaration that Defendants are financially responsible for notifying all FLSA Class Members of their alleged violations;

    c.   Designation of Bradley/Grombacher LLP and Paulson & Nace, PLLC, as the attorneys representing the FLSA Collective Class;

    d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. § 201 et seq.;

    e.   An award of damages for compensation due to the FLSA Collective Plaintiff and members of the FLSA Class, including liquidated damages, to be paid by Defendants;

    f.   Costs and expenses of this action incurred herein, including reasonable attorneys' fees and expert fees;

    g.   Pre-Judgment and post-Judgment interest, as provided by law; and

h.  Any and all such other and further legal and equitable relief as this Court deems necessary, just and proper.

## SECOND CAUSE OF ACTION
## VIOLATION OF MINIMUM WAGE PROVISIONS

## OF THE DC MINIMUM WAGE ACT [D.C. Code §32–1001 et seq.

(By Plaintiff Against all Defendants Individually

and on Behalf of the Washington D.C. Wage Class)

107.    Plaintiff incorporates by reference and realleges allegations set forth above as though fully set forth herein.

108.    Plaintiff brings this claim on behalf of herself and all members of the Washington D.C. Wage Class who were not paid the minimum wage rate required by the DC Minimum Wage Act during the period three (3) years before the filing of the instant Complaint through the date of judgment ("Employees Similarly Situated").

109.    Under the DC Minimum Wage Act, D.C. Code § 32–1003(a)(4), Defendants were required to pay the Plaintiff and all Employees Similarly Situated a minimum wage rate of $10.50 beginning July 1, 2015.

110.    Defendants, without excuse or justification, failed to pay Plaintiff and other Employees Similarly Situated the $10.50 minimum wage required by D.C. Code § 32–1003(a)(4) for at least the first 90 days of their employment.

111.    Defendants' actions were willful and not in good faith as evidenced by their failure to pay these Plaintiff and Employees Similarly Situated the minimum wage required by law when Defendants knew, or should have known, that such was due.

112.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and all Employees Similarly Situated, in addition to unpaid wages in such an amount to be proven at trial, to an additional amount as liquidated damages equal to treble the amount of unpaid wages pursuant to D.C. Code § 32–1012(b).

113.     Defendants are liable, individually and collectively, jointly and severally, for violations of the DC Minimum Wage Act pursuant to D.C. Code § 32–1012(c).

114.     Plaintiff and all Employees Similarly Situated are entitled to an award of interest, their reasonable attorneys' fees and costs under D.C. Code § 32–1012(c), plus any other and further relief this Court deems appropriate.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE DC WAGE PAYMENT LAW [D.C. Code §32–1301 et seq.]

(By Plaintiff Against all Defendants Individually

and on Behalf of the Washington D.C. Minimum Wage Class)

115.     Plaintiff incorporates by reference and reallege each and every allegation set forth above as though fully set forth herein.

116.     Plaintiff brings this claim on behalf of herself and all members of the Washington D.C. Wage Class who were not paid overtime and non- overtime compensation at the living wage rate required by the DC Living Wage Act or minimum wage required by the DC Minimum Wage Act for the period of three (3) years before the filing of the instant Complaint ("Similarly Situated Employees").

117.     Under the DC Wage Payment Law, Defendants were required to pay Plaintiff and Similarly Situated Employees all wages earned for time worked.

118.     Defendants maintained a policy against paying all wages earned by failing to pay overtime and non-overtime compensation at the living or minimum wage rate.

119.     Defendants' actions violated D.C. Code § 32–1301 et seq. by failing to pay employees all wages earned.

120.     Defendants' actions were willful and not in good faith as evidenced by their failure to pay Plaintiff and Similarly Situated Employees all wages earned when Defendants knew, or should have known, that such were due.

121.     Defendants are liable, individually and collectively, jointly and severally, to Plaintiff and the Similarly Situated Employees.

122.     Plaintiff and all Similarly Situated Employees for all unpaid wages in such an amount to be proven at trial, plus statutorily available liquidated damages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

## FOURTH CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

(By Plaintiff Against All Defendants Individually

and on Behalf of the Plaintiff Class and the Washington Consumer Class)

123.     Plaintiff pleads this fourth cause of action in the alternative to her employment-based claims.

124.     Plaintiff reincorporates by reference paragraphs 1 through 44, 48 through 65 and 73 through 83 as if fully restated herein.

125.     Plaintiff brings this Claim on behalf of herself and the Plaintiff Class for the following time periods ("Relevant Fraudulent Misrepresentation Time Period"):

| State in Which the Members of the Plaintiff Class Enrolled in an Aveda Facility | Time Period |
|---|---|
| Washington D.C. | From three years prior to the filing of this complaint until the date of entry of judgment |
| Georgia | From four years prior to the filing of this complaint until the date of entry of judgment |
| Florida | From three years prior to the filing of this complaint until the date of entry of judgment |
| Louisiana | From one year prior to the filing of this complaint until the date of entry of judgment |
| Tennessee | From three years prior to the filing of this complaint until the date of entry of judgment |
| Texas | From four years prior to the filing of this complaint until the date of entry of judgment |

26

126.     During the Relevant Fraudulent Misrepresentation Time Period, Defendants made material omissions and affirmative misrepresentations regarding the quality and nature of the Aveda Institutes programs.

127.     Specifically, Defendants falsely and misleadingly represented to the Plaintiff and the members of the Classes that instruction at the Aveda Institutes would be provided by licensed faculty, that curriculum would prepare students to meet State licensing requirements within proscribed time periods and that students would receive sufficient education to prepare them for licensing exams.

128.     Defendants also failed to disclose that students would be required to devote state-required licensing training hours to the sale of Defendants' retail products or that the curriculum would devote inordinate amounts of time to Defendants' retail product time to the detriment of state-require curriculum such as "cosmetology theory".

129.     Defendants knew, or recklessly disregarded that these representations were false when made. Defendants intentionally made these misrepresentations to increase enrollment in the Aveda Institutes programs, and to prevent students from dropping out of the program once enrolled.

130.     These misrepresentations were material because they were facts that would typically be relied on by someone in deciding whether to enroll, or stay enrolled, in a vocational or trade program.

131.     In deciding to enroll and continue to participate in the Aveda Institutes program, Plaintiff and the members of the Class relied on Defendants' misrepresentations.

132.     As a result of their reliance, Plaintiff and the members of the Classes have been injured in an amount to be determined at trial. Plaintiff is also entitled to punitive damages.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

(By Plaintiff Against all Defendants Individually

and on Behalf of the Plaintiff Class and the Washington Consumer Class)

133.     Plaintiff pleads this fifth cause of action in the alternative to her employment-based claims.

134.     Plaintiff reincorporates by reference paragraphs 1 through 44, 48 through 65, 73 through 83 and 123 through 131 as if fully restated herein.

135.     Plaintiff brings this Claim on behalf of herself and the Plaintiff Class for the following time periods ("Relevant Negligent Misrepresentation Time Period"):

| State in Which the Members of the Plaintiff Class Enrolled in an Aveda Facility | Time Period |
|---|---|
| Washington D.C. | From three years prior to the filing of this complaint until the date of entry of judgment |
| Georgia | From four years prior to the filing of this complaint until the date of entry of judgment |
| Florida | From three years prior to the filing of this complaint until the date of entry of judgment |
| Louisiana | From one year prior to the filing of this complaint until the date of entry of judgment |
| Tennessee | From three years prior to the filing of this complaint until the date of entry of judgment |
| Texas | From two years prior to the filing of this complaint until the date of entry of judgment |

136.     Throughout the Relevant Negligent Misrepresentation Time Period, Defendants made material omissions and affirmative misrepresentations regarding the quality and nature of the Aveda Institute programs.

137.     Specifically, Defendants falsely and misleadingly represented to the Plaintiff and the members of the Classes that instruction at the Aveda Institutes would be provided by licensed faculty, that curriculum would prepare students to meet State licensing requirements within proscribed time periods and that students would receive sufficient education to prepare them for licensing exams.

138.     Moreover, Defendants also failed to disclose that students would be required to devote state-required licensing training hours to the sale of Defendants' retail products or that the curriculum would devote inordinate amounts of time to Defendants' retail product time to the detriment of state-require curriculum such as "cosmetology theory".

139.     If Defendants had exercised reasonable care, they would have known these representations were false.

140.     These misrepresentations were material because they were facts that would typically be relied on by someone in deciding whether to enroll, or stay enrolled, in a vocational or trade program.

141.     In deciding to enroll and continue to participate in the Aveda Institute program, Plaintiff and the members of the Classes relied on Defendants' misrepresentations.

142.     As a result of their reliance, Plaintiff and the members of the Classes have been injured in an amount to be determine at trial.

## SIXTH CAUSE OF ACTION

## UNJUST ENRICHMENT

(By Plaintiff Against all Defendants on Behalf of Herself and the Classes)

143.     Plaintiff pleads this sixth cause of action in the alternative to her employment-based claims.

144.     Plaintiff reincorporates by reference paragraph 1 through 44, 48 through 65, 73 through 83 and 123 through 140 as if fully restated herein.

145.     Plaintiff brings this Claim on behalf of herself and the Plaintiff Class for the following time periods ("Unjust Time Period"):

| State in Which the Members of the Plaintiff Class Enrolled in an Aveda Facility | Time Period |
| --- | --- |
| Washington D.C. | From three years prior to the filing of this complaint until the date of entry of judgment |
| Georgia | From four years prior to the filing of this complaint until the date of entry of judgment |
| Florida | From four years prior to the filing of this complaint until the date of entry of judgment |
| Louisiana | From one year prior to the filing of this complaint until the date of entry of judgment |
| Tennessee | From three years prior to the filing of this complaint until the date of entry of judgment |
| Texas | From two years prior to the filing of this complaint until the date of entry of judgment |

146.     Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide Class and Washington D.C. Class (collectively the "Classes") pursuant District of Columbia law.  Although there are numerous permutations of the elements of the unjust enrichment

cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements - the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, District of Columbia law applies to the claims of the Class.

147.    In the alternative, Plaintiff brings this claim individually as well as on behalf of the Washington D.C. Class.

148.    At all times relevant hereto, Defendants deceptively labeled, marketed, advertised, and sold its educational services to Plaintiff and the Classes.

149.    Plaintiff and members of the Classes conferred upon Defendants non-gratuitous payments in the form of tuition that they would not have paid but for Defendants' deceptive labeling, advertising, and marketing.  Defendants accepted or retained the non- gratuitous benefits conferred by Plaintiff and members of the Classes, with full knowledge and awareness that, as a result of Defendants' deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

150.    Defendants have been unjustly enriched in retaining the revenues derived from tuition payments by Plaintiff and members of the Classes, which retention under these circumstances is unjust and inequitable because the Defendants falsely and misleadingly represented the nature and quality of the programs to Plaintiff and the members of the Class.

151.    Defendants' misrepresentations caused injuries to Plaintiff and the members of the Class because they would not have enrolled in the Aveda Institute and paid tuition had the true facts been known to them.

152.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Classes under these circumstances made Defendants' retention of the non-gratuitous

benefits unjust and inequitable.  Thus, Defendants must pay restitution to Plaintiff and members of the Classes for their unjust enrichment, as ordered by the Court.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF D.C. CODE§ 28-3904 et seq.**

**CONSUMER PROTECTION PROCEDURES ACT (CPPA)**

**(**By Plaintiff Individually and on Behalf of the Plaintiff Class and the Washington Consumer Class**)**

153.    Plaintiff pleads this seventh cause of action in the alternative to her employment-based claims.

154.    Plaintiff reincorporates by reference paragraph 1 through 44, 48 through 65, 73 through 83 and 123 through 152 as if fully restated herein.

155.    This Count is brought on behalf of the Plaintiff and the general public pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28- 3901 *et seq.*

156.    The Aveda Institute is a "person" within the meaning of D.C. Official Code§ 28-901(a)(l) and provides "services" within the meaning of § 28-390 l(a)(7).

157.    Plaintiff is a "consumer" within the meaning of D.C. Official Code§ 28- 3901(a)(2).

158.    D.C. Code·§ 28-3904 makes it an "unlawful trade practice .... whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things:

(a) Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(b) Represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) Misrepresent as to a material fact which has a tendency to mislead;

(t) Fail to state a material fact if such failure tends to mislead;

(f-1) Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; and

(u) Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

159.     Defendants violated these provisions by, *inter alia*, intentionally representing to Plaintiff and the members of the Washington D.C. Class that the Aveda Institutes would sufficiently staff a licensed faculty when, in fact, Defendants routinely understaffed the Institutes with the result that students were, at time, left with no instructors and/or instructors who were improperly qualified. Such staffing had the detrimental of frustrating the education of Plaintiff and the members of the Washington D.C. Class such that they did not receive all necessary education and/or could not complete the course in the time represented and/or were required to spend time learning the materials on their own without the assistance of an instructor.

160.     Moreover, Defendants represented, warranted and advertised that the Aveda Institutes would operate with a curriculum that would prepare students for the State Boards in a proscribed period of time.  Instead, Defendants curriculum was devoted to the sale of the Aveda retail line to the determent of the state-licensing based material.  Moreover, education time was taken up requiring student to make sales of Defendants' Aveda products.  Such facts, coupled with the understaffing described above, ultimately resulted in a quality of education that was inferior to the levels, qualities and characteristics advertised.

161.     As a direct and proximate result of Defendants' misrepresentations, Plaintiff was damaged in an amount to be determined at trial. Additionally, Plaintiff is entitled to statutory and treble damages as authorized by D.C. Code §28-390 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all similarly-situated persons, pray for the following relief:

1.     Enter judgment against Defendants for all unpaid overtime compensation found due to the Plaintiff and all similarly-situated employees as a result of Defendants' violations of 29 U.S.C. § 207(a), plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b);

2.     Enter judgment against Defendants for all unpaid compensation found due to the Plaintiff and all similarly-situated employees as a result of Defendants' violations of the DC Living

Wage Act, plus an additional three times the unpaid compensation owed, pursuant to D.C. Code § 2–220.08 and Chapter 13 of Title 32 of the D.C. Code;

3.      Enter judgment against Defendants for all unpaid overtime and non-overtime compensation found due to the Plaintiff and all similarly-situated employees as a result of Defendants' violations of the DC Minimum Wage Act, plus an additional three times overtime and non-overtime compensation owed, pursuant to D.C. Code § 32–1012(b);

4. Enter judgment against Defendants for all unpaid wages found due to the Plaintiff and all similarly-situated employees as a result of Defendants' violations of the DC Wage Payment Law, D.C. Code §§ 32–1300 et seq., plus an additional equal amount as liquidated damages;

5. Certify this action as a Class Action, and appoint Plaintiff as the representative of the Classes and the undersigned attorneys as Class Counsel;

6. Order that Defendants cease and desist violating the FLSA, the DC Living Wage Act, the DC Minimum Wage Act, and the DC Wage Payment Law;

7. Permanently enjoin Defendants to pay overtime and non-overtime compensation at least at the living wage rate required by the DC Living Wage Act.

8. For treble damages as authorized by D.C. Code§ 28-3904 et seq.

9. For punitive damages;

10.   Award Plaintiff the costs of this action and their reasonable attorneys' fees, pursuant to statute; and,

11. Award Plaintiff any other such relief as the Court deems just and proper.

Plaintiff, by and through his undersigned counsel, hereby demands a jury trial in the above-captioned matter.

DATED:  March 20, 2018

**PAULSON & NACE, PLLC**

By:      */s/  Christopher T. Nace*
Christopher T. Nace, Esq. #977865
1025 Thomas Jefferson Street, NW
Suite 810
Washington, DC 20007
Tel: 202-463-1999
Fax: 202-223-6824
ctnace@paulsonandnace.com


**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq.
Kiley L. Grombacher, Esq.
2815 Townsgate Rd., Suite 130
Westlake Village, CA 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
***PENDING PRO HAC VICE***

## JURY TRIAL DEMAND

Plaintiffs respectfully demand trial by jury on all counts.

*/s/  Christopher T. Nace*
Christopher T. Nace, Esq. #977865
1025 Thomas Jefferson Street, NW
Suite 810
Washington, DC 20007
Tel: 202-463-1999
Fax: 202-223-6824
ctnace@paulsonandnace.com